UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John Steuerwald,                    :
                                    :
        Plaintiff,                  :
                                    :
    v.                              :    Case No. 1:14-cv-88-jgm
                                    :
Richard Cleveland,                  :
City of Montpelier,                 :
Vermont, and Glen Marold,           :
                                    :
        Defendants.                 :

OPINION AND ORDER
(Docs. 24, 32, 40, 41, 42, 44)

        Plaintiff John Steuerwald, proceeding pro se, brings this
civil rights action under 42 U.S.C. § 1983 against Defendants
Richard Cleveland ("Cleveland"), the City of Montpelier, Vermont
("the City"), and Glen Marold ("Marold").  Steuerwald alleges
violations of his Fourth, Fourteenth, and Eighth Amendment rights
arising from an arrest that occurred on March 8, 2011, in
Montpelier, Vermont.  Now pending before the Court are
Defendants' motions to dismiss (Docs. 24, 40, 41, 42),
Steuerwald's motion for summary judgment (Doc. 32), and
Steuerwald's motion to amend the complaint and motion for a court
Order to view the CD/DVD of 3/8/11 incident (Doc. 44).

Factual Background and Procedural History

        Steuerwald is an inmate in the custody of the State of
Vermont.  Cleveland is a police officer for the City, and Marold
is a firefighter and emergency medical technician ("EMT"), also

employed by the City. Steuerwald brings suit against Cleveland and Marold in both their official and individual capacities, and he sues the City under a theory of municipal liability.

Steuerwald initially filed this lawsuit in the Vermont Superior Court on February 28, 2014. (Doc. 7.) Defendants removed the case to this Court on April 29, 2014. (Doc. 1.) On October 30, 2014, the Court granted Steuerwald's motion to amend the complaint (Doc. 37), and denied without prejudice Defendants' then-pending motions to dismiss (Docs. 36, 38).

For the purpose of the pending motions to dismiss, the Court assumes as true the facts alleged in Steuerwald's First Amended Complaint. (Doc. 39.) Steuerwald alleges that in the early morning hours of March 8, 2011, Cleveland and Officer Jacqueline Adams responded to a call from a neighbor regarding a domestic disturbance at an apartment in Montpelier, Vermont. (Doc. 39 at 2.) At approximately the same time police arrived, Steuerwald was engaged in a physical altercation with a female who had jumped on and attacked him. Id. Steuerwald and the woman fell to the ground just as Cleveland kicked open the door to the apartment and drew his firearm on Steuerwald. Id. Steuerwald "was not actively posing a threat, or actively causing harm to [the woman]." Id. at 3. Cleveland could see that Steuerwald was not causing a threat to anyone present or trying to flee. Id. Steuerwald was intoxicated at the time of the incident, and at

some point thereafter, his blood alcohol content ("BAC") was measured as .218.  Id. at 11.

Cleveland holstered his firearm and picked up Steuerwald from the floor by pulling Steuerwald's right arm with a "violent" motion.  (Doc. 39 at 11.)  Steuerwald experienced severe pain and was later diagnosed with a right rotator cuff injury that will require surgery.  Id.  As a result of the injury, Steuerwald could not use his right arm for almost four months and experienced difficulty sleeping.  Id.

Cleveland and Officer Adams arrested Steuerwald and transported him to the Montpelier Police Department.  (Doc. 39 at 6.)  Steuerwald told Cleveland that his shoulder was injured during the arrest and requested medical attention.  Id.  Steuerwald "was placed in a restraint belt" and locked in a holding cell.  Id.  Steuerwald was crying and screaming and remained in severe pain.  Id. at 10.  Steuerwald eventually "passed out from a mix of [extreme] pain and intoxication."  Id. at 6.  He fell off the cell bench and struck his head on the floor.  Id. at 7.  The restraint belt prevented Steuerwald from putting his hands in front of him to protect his head from the fall.  Id. at 10.

Cleveland called for medical personnel.  (Doc. 39 at 7.)  Marold and another EMT, Justin Redman, responded to the call.  When they arrived, Steuerwald was unconscious and lying on the floor.  Id. at 10.  Cleveland attempted to wake up Steuerwald by

"kick[ing] the back of [Steuerwald's] head with one of his feet,
or hand." Id. at 7. Steuerwald was in a state of semi-
consciousness. Cleveland then told the EMTs that Steuerwald "was
not in need of any kind of medical attention," they "did not need
to see or evaluate" him, and he would not allow them inside
Steuerwald's cell. Id. at 8. At some point, Marold and Redman
left without treating Steuerwald.

Several hours later, Cleveland entered the holding cell and
removed the restraint belt, allowing Steuerwald to move his arms
freely. (Doc. 39 at 12.) Steuerwald asked for medical attention
again, but Cleveland did not make the call. Id. Instead,
Cleveland told Steuerwald to "stop your complaining[,] you will
get to see a doctor at jail." Id. Eventually Steuerwald was
removed from the holding cell and placed in handcuffs, causing
additional pain to his injured right shoulder. Id. Steuerwald
was transported to a correctional facility while he remained in
pain and eventually received medical treatment. Id. at 13.

At a bail hearing on September 28, 2012, Cleveland allegedly
gave false testimony regarding the circumstances which led to
Steuerwald's arrest, testifying that Steuerwald would have
"killed" the woman in the apartment but for Cleveland's
intervention. (Doc. 39 at 5.) Cleveland also testified that he
injured Steuerwald in the struggle, and that Steuerwald requested
medical attention prior to falling off the cell bench. Id. at 7.
He testified Steuerwald was "cooperative" and "not resisting

4

arrest" when he placed Steuerwald in the restraint belt. Id. at

14. After Steuerwald fell, he told Cleveland that he had a head

injury. Id. at 5. Cleveland was aware that Steuerwald was

knocked unconscious as a result of hitting his forehead when he

fell. Id. at 7. Cleveland also testified that he knew

Steuerwald's BAC was .218, over three times the legal limit. Id.

On March 25, 2014, Steuerwald sent a public records request

to the City of Montpelier seeking a copy of the ambulance log

report for the date of the incident. (Doc. 39 at 16.) The

documents he received included a report from the encounter with

Steuerwald authored by Marold, and it stated that "[first] aid

was given". Id. In other sections of the report, however, a box

is marked "none" for "aid given or received[.]" Id. The report

also states, "NO COMPLAINTS OF INJURY, NO [INJURIES] FOUND[.]"

Id. Steuerwald alleges that Marold falsified the log report.

Id.

On May 15, 2014, Steuerwald's "POA," a person he refers to

as "JR," reviewed a video of Steuerwald from a holding cell

camera taken on the night of the incident. (Doc. 39 at 10.) The

video shows that Steuerwald was "cooperative" when Cleveland and

Officer Adams put him in the restraint belt, and that he was not

posing a threat to the police or to himself or trying to flee.

Id. The video shows Steuerwald crying and screaming in pain and

then falling and hitting his head. Id. While Steuerwald

remained on the floor unconscious, police officers took photographs of him and moved him around on the floor.  Id. at 15.

Steuerwald makes the following claims against the Defendants: (1) Section 1983 conspiracy claims against Cleveland and Marold; (2) Cleveland violated his Fourth, Fourteenth, and Eighteenth Amendment rights; (3) Marold violated his Fourteenth Amendment due process rights; and (4) the City is liable for Cleveland and Marold's conduct under a theory of municipal liability.  (Doc. 39.)  As relief, Steuerwald seeks nominal, compensatory, and punitive damages.

Discussion

I.  <u>Motion to Dismiss Standard of Review</u>

Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Filings by self-represented parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

Federal Rule of Civil Procedure 8(a) requires the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  On a motion to dismiss under Rule 12(b)(6), the court reviews the face of the plaintiff's complaint and accepts all factual allegations as true and draws all reasonable inferences in favor

6

of the plaintiff.  Price v. N.Y. State Bd. of Elections, 540 F.3d
101, 107 (2d Cir. 2008).  "[A] complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007)).  "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully."  Iqbal, 556
U.S. at 678.

## II.  Section 1983 Conspiracy Claims

In response to Defendants' pending motions, Steuerwald moves
to voluntarily dismiss all § 1983 conspiracy claims against
Cleveland and Marold under Federal Rule of Civil Procedure 41(a).
(Docs. 27 at 15, 46 at 6.)  Steuerwald's request is GRANTED, and
all § 1983 conspiracy claims are DISMISSED without prejudice.
Fed. R. Civ. P. 41(a)(2).

## III. Official Capacity Claims

As a preliminary matter, Cleveland and Marold both argue
they cannot be sued in their official capacities because
Steuerwald named the City as a Defendant.

"[O]fficial-capacity suits generally represent only another
way of pleading an action against an entity of which an officer
is an agent."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691
n.55 (1978).  Therefore, "[a] suit for damages against a
municipal officer in their official capacity is the equivalent of

a damage suit against the municipality itself." <u>Escobar v. City of N.Y.</u>, No. 1:05-cv-3030-ENV-CLP, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007) (citation omitted). Where a plaintiff brings § 1983 claims against municipal employees in their official capacities, together with claims against the municipality itself, the official capacity claims are "merely duplicative" and typically dismissed in favor of the municipal entity. <u>Id.</u>; <u>see also</u> <u>Carmody v. Vill. of Rockville Centre</u>, 661 F. Supp. 2d 299, 329 (E.D.N.Y. 2009).

Therefore, because Steuerwald has named the City under a theory of § 1983 municipal liability, all official capacity claims against Cleveland and Marold are DISMISSED as duplicative.

IV. <u>Individual Liability Claims</u>

    A. <u>Richard Cleveland</u>

Cleveland argues Steuerwald's claims are barred by the doctrine of res judicata, citing a previous state civil suit brought by Steuerwald that was dismissed for failure to state a claim. <u>See</u> <u>Steuerwald v. Cleveland</u>, Docket No. 1-1-13 Wncv (Vt. Super. Ct. Apr. 26, 2013); (Doc. 41-2) (hereinafter "2013 action" or "2013 judgment"). Steuerwald opposes, arguing that the judgment issued by the Vermont Superior Court does not constitute a "final judgment" for purposes of res judicata.

A review of the state court documents submitted by both parties[1] shows that on December 29, 2012, Steuerwald brought suit against Cleveland alleging that Cleveland gave false testimony in connection with Steuerwald's criminal case stemming from the March 8, 2011 incident. (Doc. 41-1.) On April 26, 2013, the Vermont Superior Court granted Cleveland's motion to dismiss Steuerwald's complaint, concluding that no private right of action exists for perjury and that Cleveland is entitled to witness immunity for statements given in connection with a judicial proceeding. (Doc. 41-2 at 1.) The Superior Court also denied Steuerwald's request to amend his complaint to include § 1983 claims for malicious prosecution or other unnamed "civil rights violation[s]." Id. at 2.

"Under the Constitution's Full Faith and Credit Clause . . . federal courts must accord state court judgments the same preclusive effect as other courts within that state." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (citing Migra v. Warren City Sch. Dist., 465 U.S. 75, 81 (1984)). Accordingly, the Court looks to the doctrine of res judicata under Vermont law which "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially

---

[1] Although typically matters outside the pleadings are not considered on a 12(b)(6) motion to dismiss, the Court may take judicial notice of court documents and other items of public record of which plaintiff had actual notice and relied upon in framing his or her complaint. See Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000).

identical." Berlin Convalescent Ctr., Inc. v. Stoneman, 615 A.2d 141, 143 (Vt. 1992) (internal quotation marks and citation omitted).

Res judicata applies if "'(1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding.'" Iannarone v. Limoggio, 30 A.3d 655, 660 (Vt. 2011) (quoting In re St. Mary's Church Cell Tower, 910 A.2d 925, 926 (Vt. 2006)); see also In re Cent. Vt. Pub. Serv. Corp., 769 A.2d 668, 673 (Vt. 2001) (res judicata applies to claims actually made in the earlier case, as well as claims that "should have been litigated in the prior proceeding").

Steuerwald argues that res judicata does not apply here because the 2013 judgment was not a final judgment "on the merits," and the Superior Court either actually did or should have dismissed the 2013 action "without prejudice." (Doc. 46 at 25.) Although the 2013 judgment does not expressly rule on the issue of whether the motion to dismiss was granted with prejudice, under Vermont Rule of Civil Procedure 41(b), involuntary dismissal other than for lack of jurisdiction, improper venue, or failure to join a party "operates as an adjudication on the merits" unless otherwise specified. See Vt. R. Civ. P. 41(b)(3); see also Judd v. State, No. 2011-350, 2012 WL 1305003, at *2 (Vt. Mar. 15, 2012) (Unpublished Entry

10

Order) (affirming application of res judicata where previous order did not specify whether involuntary dismissal ordered with or without prejudice).  Because the 2013 judgment granted the involuntary motion to dismiss filed by Sergeant Cleveland and did not specify otherwise, dismissal on the merits is presumed.  The Court concludes that the 2013 judgment is a final judgment on the merits for res judicata purposes.

The parties do not dispute that they are the same parties here for purposes of the pending motions.  Therefore, the remaining issue is whether the present action is based upon the same or substantially identical subject matter and causes of action, such that Steuerwald could have brought his current claims in the prior action.

"In determining whether two causes of action are sufficiently similar for claim preclusion purposes," Vermont law requires the court to consider "whether the same evidence will support both of them."  Faulkner v. Caledonia Cnty. Fair Ass'n, 869 A.2d 103, 108 (Vt. 2004).  Under this "transactional" test, the court examines whether "the facts underlying both cases are inextricably 'related in time, space, origin, or motivation.'" Id. at 109 (citing Restatement (Second) of Judgments § 24(2) (1982)).  This test encompasses a growing trend toward a "broader approach" that "requir[es] a plaintiff to address in one lawsuit all injuries emanating from all or any part of the transaction, or series of connected transactions, out of which the action

arose." Id. at 108-09 (internal quotation marks and citation omitted).

Here, both cases arise from the March 8, 2011 arrest and allege claims based upon Cleveland's conduct on the day the arrest occurred and during subsequent, related criminal proceedings. Steuerwald extensively cites Cleveland's 2012 bail hearing testimony in both complaints because Cleveland's allegedly false testimony pertains to the same set of circumstances underlying the claims in both cases. Compare Doc. 24-1 at 1 with Doc. 39, ¶¶ 4, 23. Steuerwald's alleged medical needs – and Cleveland's deliberate indifference to them – became an ongoing concern from the point Steuerwald first became injured. All of Steuerwald's claims against Cleveland in each case arise from what each party did or did not do on March 8, 2011, and allege Cleveland damaged Steuerwald as a result of this conduct. Therefore, the Court concludes all the injuries alleged against Cleveland stem from the same transaction or series of transactions.

The Court also concludes that Steuerwald could have brought his current claims when he filed the 2013 action. See Devers-Scott v. Markowitz, 307 F. App'x 481, 483 (2d Cir. 2008) (affirming dismissal of claims not initially brought in state civil matter on res judicata grounds where plaintiff could have brought claims in first action).

First, Steuerwald cannot claim ignorance of the existence of his claims at the time he filed the 2013 action. Cf. Montgomery v. NLR Co., No. 2:05-cv-251, 2007 WL 3243838, at *3 (D. Vt. Nov. 2, 2007) (noting plaintiff unaware of facts to support potential claim due to concealment by defendant). The complaint in the 2013 action relies upon the same facts alleged here, referring to "an extreme[e] struggle" taking place during the arrest, as well as Cleveland's testimony that "the struggle was so bad he could not get me hand[]cuffed." (Doc. 24-1 at 1.) Steuerwald also alleged Cleveland "[claims] that [during] that struggle [] [h]e [injured] me most likely with [his] wrist [watch]." Id. The Amended Complaint here also alleges Cleveland testified at the 2012 bail hearing about Steuerwald's head injury and about his request to be seen by medical personnel. (Doc. 39 at 7.) These allegations demonstrate that the facts giving rise to Steuerwald's current claims were known to him at the time he filed the 2013 action.

Steuerwald argues he did not know what had happened in the holding cell at the Montpelier Police Department until he learned about the contents of the holding cell video. (Doc. 27 at 10.) However, he also did not have the benefit of the contents of the video when he initially filed this matter on February 28, 2014 (Doc. 7), because he did not learn about the contents of the

video until May 15, 2014 (Doc. 39 at 10)[2].  That Steuerwald has

discovered additional evidence which allegedly supports his

claims has no bearing on whether he should have brought his

claims in the first case.  See e.g., Faulkner, 869 A.2d at 110

(applying claim preclusion where plaintiff later discovered

additional evidence bearing on severity of injury).[3]

To the extent Steuerwald might argue that pendency of his

criminal matter during the 2013 action prevented him from

bringing his current claims, the Court's conclusion is not

altered.  Depending on the circumstances, a claim for excessive

force can exist regardless of whether the plaintiff is convicted

of the underlying crimes for which he is charged.  See Poventud

v. City of N.Y., 750 F.3d 121, 132 (2d Cir. 2014) ("[W]hen a

suspect sues his arresting officer for excessive force, a § 1983

suit may proceed even if the suspect is ultimately convicted of

resisting arrest."); Sullivan v. Gagnier, 225 F.3d 161, 166 (2d

Cir. 2000) (excessive force claim not "precluded by the

plaintiff's prior convictions for resisting arrest and harassment

unless facts actually determined in his criminal conviction that

were necessary to the judgment of conviction are incompatible").

---

[2] Steuerwald nonetheless alleged in February 2014 that he "was placed in a
restraint belt[,]" that he told Cleveland he was hurt and needed medical
attention, that Cleveland called medical personnel after he fell off the
bench, and Cleveland refused to allow medical personnel to see him.  (Doc. 7
at 4.)

[3] Faulkner's reasoning also applies to the allegation in the Amended Complaint
that Steuerwald did not learn of the nature of his shoulder injury until May
2, 2014.  (Doc. 39 at 4.)  See Faulkner, 869 A.2d at 111 (holding "it is
'immaterial' for claim preclusion purposes that [plaintiff's] injuries turned
out to be more severe" than those for which she initially sought damages).

Likewise, a plaintiff's conviction status is not related to a claim for inadequate medical care during pretrial detention. See Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009) (holding that to establish § 1983 pretrial detention claim, plaintiff must prove defendant "disregarded risk of harm to the plaintiff of which the defendant was aware").

The Court is cognizant of the fact that applying res judicata, especially in a pro se case, can render harsh results. However, "[t]he doctrine of res judicata is equally applicable to pro se plaintiffs." Iwachiw v. N.Y.C. Bd. of Educ., 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002) (collecting cases); see also Cieszkowska v. Gray Line N.Y., 295 F.3d 204, 205-06 (2d Cir. 2002) (affirming dismissal of pro se plaintiff's complaint on res judicata grounds where plaintiff raised new legal theory involving the same events as those alleged in the first complaint); Bain v. Hofmann, 993 A.2d 432, 436 (Vt. 2010) (affirming dismissal of inmate's pro se complaint on res judicata grounds).

Furthermore, as the Supreme Court has explained, "[s]ection 1983 [] does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims." Migra, 465 U.S. at 85; see also Golkin v. Abrams, 803 F.2d 55, 57 (2d Cir. 1986) (holding that under Migra a federal court must apply claim preclusion "even when the

15

precluded issue was not raised in the state court but could have been"). In this case, giving full faith and credit to the state court judgment also requires the Court to resist ad hoc review of the procedural determinations not to grant Steuerwald's requests for voluntary dismissal or leave to amend, especially where Steuerwald did not appeal those issues. See Gargiul v. Tompkins, 790 F.2d 265, 273-74 (2d Cir. 1986) (observing that "[t]o be entitled to full faith and credit, a prior judgment 'need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment Due Process Clause.'" (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481 (1982)). As the state court observed, "Mr. Steuerwald chose the time for bringing suit." (Doc. 41-2 at 2.)

Therefore, because the 2013 judgment dismissed on the merits all claims against Cleveland arising from the March 8, 2011 arrest, and Steuerwald could have brought his current claims in that case, his claims against Cleveland are barred by the doctrine of res judicata. Cleveland's motions to dismiss (Docs. 24, 41) are GRANTED, and all claims against Cleveland are DISMISSED with prejudice.

B. Glen Marold

Steuerwald alleges Marold violated his Fourteenth Amendment right to due process when he allegedly falsified the ambulance log report. (Doc. 39 at 19.) Marold argues Steuerwald fails to state a due process claim because Steuerwald does not have a

16

protected property interest in the maintenance of accurate ambulance logs.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012). As the Supreme Court has observed, "[t]he procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'" Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). "The inaccuracy of records compiled or maintained by the government is not, standing alone, sufficient to state a claim of constitutional injury under the due process clause of the Fourteenth Amendment." Bustillos v. Gomez, No. C 94-1184 MHP, 1994 WL 721482, at *1 (N.D. Cal. Dec. 28, 1994) (citing Paul v. Davis, 424 U.S. 693, 711-14 (1976).

Property interest entitlements "are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Here, Vermont law applies to the determination of whether Steuerwald possesses a protected property interest. See Paul v. City of Burlington, No. 1:02-CV-167, 2004 WL 2732179, at *3 (D. Vt. Feb. 5, 2004), aff'd sub nom. Preseault v. City of Burlington, 464 F.3d 215 (2d Cir. 2006). "[W]here the claimed interest is rooted in state law, we look to the particular state

17

statute, contract, or regulation that purports to establish the
asserted entitlement in order to assess the parameters and the
strength of the alleged interest to determine if due process
protection applies." <u>Sealed v. Sealed</u>, 332 F.3d 51, 56 (2d Cir.
2003) (internal quotation marks and citation omitted). "To have
a property interest in a benefit, a person clearly must have more
than an abstract need or desire for it." <u>Bd. of Regents v. Roth</u>,
408 U.S. at 577. Steuerwald has not cited any state statute or
contract as a source of a protected property interest, nor does
he allege any facts to suggest any impact on or deprivation of a
property interest.

As for a protected liberty interest, Steuerwald would need
to allege some interest that "arise[s] from the Constitution
itself, by reason of guarantees implicit in the word 'liberty,'
or [one that] may arise from an expectation or interest created
by state laws or policies." <u>Wilkinson v. Austin</u>, 545 U.S. 209,
221 (2005) (citations omitted). Here, Steuerwald neither
identifies a liberty interest, nor can the Court construe a
protected liberty interest from the facts alleged. <u>Cf</u>. <u>Paine v.
Baker</u>, 595 F.2d 197, 201 (4th Cir. 1979) (holding that procedural
due process claim may exist where false information in prison
file is relied upon to deny parole or good-time credits).
Although Steuerwald's present incarceration does restrain his
liberty, the facts alleged do not suggest any relation between

that liberty interest and the claim against Marold regarding the ambulance logs.

Because Steuerwald has not alleged any facts to suggest that a protected liberty or property interest exists with respect to the falsified ambulance logs, he has not stated a plausible Fourteenth Amendment due process claim against Marold. Accordingly, Marold's motions to dismiss (Docs. 24, 42) are GRANTED.

V.   Municipal Liability Claims

Steuerwald alleges the City is liable because a policy or training custom caused Cleveland and Marold's conduct or lack of adequate response.  The City argues the Amended Complaint does not contain sufficient facts to establish a plausible claim for municipal liability under § 1983.  (Doc. 40 at 3-7.)

Municipalities may be held liable for unconstitutional acts by their employees if those acts were performed under a municipal policy or custom that caused the plaintiff's injury.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  The doctrine of respondeat superior does not apply to municipalities for allegations of constitutional violations.  See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997).

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to

(3) a denial of a constitutional right." Batista v. Rodriguez,

702 F.2d 393, 397 (2d Cir. 1983). "The failure to train or

supervise city employees may constitute an official policy or

custom if the failure amounts to 'deliberate indifference' to the

rights of those with whom the city employees interact." Wray v.

City of N.Y., 490 F.3d 189, 195 (2d Cir. 2007) (citing City of

Canton v. Harris, 489 U.S. 378, 388 (1989)). To establish

deliberate indifference, the plaintiff must allege facts to show:

> (1) that a policymaker knows to a moral
> certainty that her employees will confront a
> given situation; (2) that the situation
> either presents the employee with a difficult
> choice of the sort that training or
> supervision will make less difficult or that
> there is a history of employees mishandling
> the situation; and (3) that the wrong choice
> . . . will frequently cause the deprivation
> of a citizen's constitutional rights.

Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415,

440 (2d Cir. 2009) (quotation marks and citation omitted).

In the present case, Steuerwald has not alleged any facts to

support the required elements of a municipal liability claim. A

mere assertion that a municipality has a custom or policy is

insufficient in the absence of allegations of fact tending to

support, at least circumstantially, an inference that the policy

existed. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)("bald

assertions and conclusions of law" insufficient to plead

municipal liability).

Furthermore, a single incident involving actors below the policymaking level is generally insufficient to raise an inference of the existence of a custom or policy. See e.g., City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985); Hunter v. Town of Shelburne, No. 5:10-cv-206, 2011 WL 5562809, at *3 (D. Vt. Nov. 14, 2011) (dismissing municipal liability claims that "focus on a single arrest by identified police officers, and do not allege notice to the Town that these officers needed additional training, monitoring, or other supervision). Absent other circumstantial evidence, the Second Circuit has held that, "before the actions of subordinate city employees can give rise to § 1983 liability, their discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 871 (2d Cir. 1992).

Additionally, under Twombly and Iqbal, "a plaintiff pleading failure to train must provide more than 'a simple recitation' of the theory of municipal liability." Kucera v. Tkac, No. 5:12-cv-264, 2013 WL 1414441, at *9 (D. Vt. Apr. 8, 2013) (citing Iqbal, 556 U.S. at 679); see also Simms v. City of N.Y., No. 10-CV-3420 (NGG)(RML), 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept. 28, 2011) (observing that simply pleading a failure to train cannot survive Iqbal and Twombly).

Accordingly, because the Amended Complaint does not allege sufficient factual allegations to reasonably allow the Court to

infer the existence of a municipal policy or custom giving rise
to liability under § 1983, the City's motions to dismiss (Docs.
24, 40) are GRANTED, and all claims against the City are
DISMISSED.

## VI.  Steuerwald's Motion to Amend and Motion Regarding CD/DVD

Steuerwald has moved for leave to file a second amended
complaint and for a court order directing the Vermont Department
of Corrections to facilitate Steuerwald's viewing of the CD/DVD
of the March 8, 2011 incident.  (Doc. 44.)

The Second Circuit has held that district courts should not
dismiss the claim of a self-represented party without granting
leave to amend at least once "when a liberal reading of the
complaint gives any indication that a valid claim might be
stated."  Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002)
(internal quotation marks and citation omitted); see also Fed. R.
Civ. P. 15(a)(2) ("the court should freely give leave [to amend]
when justice so requires").  However, leave to amend is not
required where it would be futile.  See Cuoco v. Moritsugu, 222
F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's]
causes of action is substantive; better pleading will not cure
it.  Repleading would thus be futile.  Such a futile request to
replead should be denied.").

Here, the Court concludes that granting leave to amend would
be futile with respect to the claims alleged against Cleveland

because better pleading will not cure the res judicata bar under these circumstances. However, with respect to Steuerwald's claims against the other Defendants, a possibility remains that additional factual allegations could yield viable claims. Steuerwald also suggests that additional defendants may be liable, and he may have additional claims under state law.

As for Steuerwald's request for an order directing the Vermont Department of Corrections to download software necessary to view his copy of the CD/DVD, the Court lacks authority to grant this request because the Vermont Department of Corrections is not a party to this action. Therefore, Steuerwald's request is DENIED.

Accordingly, the Court GRANTS in part and DENIES in part Steuerwald's Motion to Amend Complaint and Motion for a Court Order to View the CD/DVD of 3/8/11 Incident. (Doc. 44.)

VII. Steuerwald's Motion for Summary Judgment

Finally, Steuerwald has filed a pleading entitled, "Plaintiff[']s Opposition and Reply Memorandum of Law in Further Sup[p]ort of Plaintiff['s] Opposition and For Judgment as a Matter of Law on the Pleadings." (Doc. 32.) To the extent this pleading may be construed as a motion for summary judgment, the motion is DENIED without prejudice as premature. Steuerwald may renew his motion if he files a second amended complaint.

CONCLUSION

For the reasons set forth above, all § 1983 conspiracy claims against Cleveland and Marold are DISMISSED without prejudice.  All official capacity claims against Cleveland and Marold are DISMISSED as duplicative.  Further, Cleveland's motions to dismiss (Docs. 24, 41) are GRANTED, and all claims against Cleveland are DISMISSED with prejudice.  Marold's motions to dismiss (Docs. 40, 42) are GRANTED.  Steuerwald's motion to amend complaint (Doc. 44) is GRANTED, and motion for a court Order to view the CD/DVD of 3/8/11 incident (Doc. 44) is DENIED.  Steuerwald's motion for summary judgment (Doc. 32) is DENIED without prejudice.

Steuerwald may file a second amended complaint, consistent with this Opinion and Order, within thirty (30) days.  Any amended filing shall be entitled "Second Amended Complaint" and will supersede all other complaints.  It must allege all claims and name all defendants Steuerwald intends to include.  Failure to file a second amended complaint, on or before April 30, 2015, may result in final dismissal with prejudice of the claims dismissed herein.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 31st of March, 2015.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge